# McIntosh *v.* Cooper, *et al.*

*Bill for an Accounting and to Redeem.*

(Decided April 21, 1910. 52 South. 431.)

*Mortgages; Redemption; Amount of Debt.*—In a suit to redeem from a mortgage with answer and cross bill seeking to foreclose that mortgage and other mortgages between the same mortgagor and mortgagee, where the evidence showed that the mortgage from which redemption was sought was substituted for the other mortgage, and the amount found due covered the entire sum due with interest, and the attorney's fees were agreed upon, the mortgagee could not complain of a decree awarding redemption on the payment of such sum.

APPEAL from Coffee Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by William Cooper and others against Kenneth McIntosh to redeem from a mortgage, in which defendant filed a cross-bill for the foreclosure of that and other mortgages. From a decree for plaintiffs, defendant appeals. Affirmed.

The report of the register is as follows:

"Pursuant to the decree of the court, made and entered on the 11th day of February, 1908, I have proceeded to inquire and take testimony as by law provided, and upon the taking of such testimony there was submitted before me the testimony in this cause taken on January 23, 1908, together with the exhibits thereto, consisting of mortgages, receipts, etc., bound in with the testimony, and of an account book, which is an exhibit and which accompanies the testimony. There has also been taken and submitted before me the testimony of Lizzie Fitzpatrick, Sam Wilkerson, and Joe Tames, taken prior to the reference. An agreement has been made as to attorney's fees. In consideration of the testimony I have had before me three of the parties to the suit and one witness, who from the testimony appears to have no interest of any sort, and who is unimpeached as to the veracity and good character. There is a vast variance between the amount alleged to be due upon the mortgage debt by the opposing parties herein, and that is the only matter that presents difficulties in the making of this report.

"As to usury, the register finds no testimony as to sufficient rate and definiteness upon which to cause a serious consideration of that phase of the case. Proof as to the admissions of the respondent and cross-complainant that he generally charged 12 1-2 per cent., that he charged the Coopers that rate, etc., in the absence of proof that the Coopers entered into a usurious contract for the payment of interest at a rate higher than 8 per

cent., fails to make out the averment of usury in any sum. In the event that usurious interest was charged, or, rather, in the event that a rate of interest was charged which was higher than 8 per cent., there is no evidence before me on which I could take out the overcharge, or surplusage of interest greater than 8 per cent., charged as a part of the mortgage debt claimed. According to the testimony of McIntosh, he bought the mortgage given by the Coopers to B. J. Stevens, paying therefor the sum of $66.75, on December 18, 1903. On December 15, 1903, he took a mortgage from them for $169.14. There is no testimony to show that he made them the loan of the 15th inst., and included therein as part of the consideration the mortgage that he took up from Stevens three days later, though this would not be an unnatural thing to do. In the spring of 1905 he took a mortgage for $169.75, and in January, 1906, he took a mortgage for $147. The testimony of McIntosh is to the effect that he did not take up and carry forward the balance unpaid into the new mortgage, but that each time he let the old mortgage stand for what was unpaid on it, and took a new mortgage for the new advances. He also testified that the odd amount of cents came in by the old negro just telling him how much he wanted, and that it did not come from interest calculation. Immediately after McIntosh had taken the 1906 mortgage, he had, according to his testimony, advanced the old negro a total of about $550, and had been paid considerably less than $200 during the time.

"In the light of the fact that McIntosh's accuracy and recollection must be weighed against the accuracy and recollection of Lizzie Fitzpatrick and Tom Wilkerson, opposing parties, and of Joe Tames, who is not a party to the suit, it is well that the manner of keeping the account book, which is in evidence, and such deduc-

tions and presumptions as may be therefrom reached in connection with the testimony, and in the light of common knowledge of men and things, to be considered, in making up the findings of this report. The book goes from rear to front, according to the testimony of Mr. McIntosh. The items were charged as the advances were made, on the book which is in evidence, and were not charged elsewhere and posted forward to the book. In view of this, it is noteworthy that the guano for the three years is all charged in one bunch on entries near the bottom of page 194 of said account book. Another noteworthy point about the account book is the fact that in nearly or quite all of the charges for flour, of which there are a number in the whole three years' dealings, the price remained the same, 3 cents per pound. Other items carried the same prices through the whole period or very nearly the same price; the ordinary variations of the commodity price that so frequently occur in the necessities of life, not having occurred during the three years previous, or, if they did occur, they affected the prices charged Cooper and his wife by McIntosh very little. Then the prices are very remarkably reasonable for credit prices to customers that were paying only 8 per cent. interest. These matters are, of course, of secondary weight; but the register has considered them along with the other testimony, and his common knowledge in making up his findings. The physical condition of the books in which the accounts were kept was pointed out to the register by counsel for Cooper, and it is a matter not improperly to be considered.

"This book has been kept all three of the years; the manner of its keeping having been several times referred to herein. The register takes note of the fact that the book is unusually clean and neat for a pencil account book, and that the pencil entries appear to be such that

they could have been all made with one pencil at one time; the lighter colored marks with the pencil point dry, and the dark-colored with the pencil moistened in the mouth. The account book is of soft, cheap paper, on which the impression of the pencil makes an indentation on the reverse side of the paper. Use and handling of the book, along with the lapse of time, frequently smooths down the indentations in paper. The account for 1903, on page 196, was first made; in writing the 1904 account on page 195, the indentations made on 195 · in keeping of the 1903 account on the reverse side of the leaf which is page 196, were not rubbed or smoothed down, indicating to the register a remarkably great care and neatness. It is not unreasonable from the conditions of the account as to all guano entries, prices, freshness of the book, and condition of colors of pencil marks, similarity of prices all through, reverse indentations not smoothed down, etc., noted to a length that is also prolix, and other indications not here mentioned, but which are noteworthy, from a careful examination of the book, to conclude that the witness McIntosh may be in error in regard to the manner in which he kept the book, the time when the entries were made, etc.; and this will be and is considered by the register along with other testimony in making up this report. The admissions made to Joe Tames (who stands in this matter as without interest in the premises) by McIntosh are that the debt was between $150 and $175. The two negroes (who are interested) swear that the amount that was stated to them by McIntosh was $147, or thereabouts. Mr. McIntosh makes the amount a great deal larger in his testimony; but, for the reasons herein stated, I am construed to believe that he is in error in his contention. About the amount paid Tames there was no controversy.

[McIntosh v. Cooper, et al.]

About the attorney's fees there is an agreement in writing.

"I beg leave to report as follows: (1) I find no usury in the mortgage debt. (2) I find the mortgage debt to be as follows:

| | |
|---|---:|
| Amount due Sept. 1, 1906 | $175 00 |
| Interest to June 29, 1908 | 25 65 |
| Amount paid Tames | 12 00 |
| Interest on same | 2 06 |
| Advertising fee | 5 00 |
| Total | $219 71 |

"I report the attorney's fee for respondent to be $75."

CLAUD RILEY, and J. F. SANDERS, for appellant. The court erred in overruling the exceptions filed to the register's report.—*Gresham. v. Ware,* 79 Ala. 192; *Noble v. Gilliam,* 136 Ala. 618; *Pollard's Case,* 139 Ala. 184. The burden was upon the respondent to show payment and to show any contentions growing out of the consideration of the note, and the same should have been pleaded.—*Tatum v. Yohn,* 130 Ala. 575; *Moore v. Barker,* 118 Ala. 563; *Pearce v. Walker,* 103 Ala. 250; *Morton v. Foster,* 83 Ala. 213; *Bray v. Comer,* 82 Ala. 183. The court erred in rendering a decree directing a reference before settling the equity between the parties.— *May v. Folsam,* 113 Ala. 198.

C. W. SIMMONS, for appellee. No brief came to the Reporter.

MAYFIELD, J.—This bill was filed by appellees, as mortgagors, to redeem. Respondent (appellant) answered the bill, and filed a cross-bill, by which he sought

[McIntosh v. Cooper, et al.]

to foreclose the mortgage from which redemption was sought and several other mortgages by the same parties to him. Appellees answered the cross-bill, denying the facts set up therein, in so far as it sought to show that the several mortgages were to secure separate and distinct debts or liabilities; but alleged that the first or oldest mortgage was merged into the second, and the second into the third, and so on, and that the last mortgage embraced and covered all the indebtedness due from the mortgagors to the mortgagee, and that it was substituted for all previous mortgages between the parties. This, and the amount of the indebtedness, were really the only controverted questions in the case; the appellees contending that the balance due on the mortgage was something between $140 and $175, with interest thereon, and appellant contending that it was $400 or $500, with interest.

The register held a reference to ascertain the amount of the indebtedness, and reported it to be $219.71. This report was very full and went into details, reviewing the evidence at length and stating the reasons which had led the register to his conclusions. We have examined carefully the evidence, including the original papers, mortgages, books, and accounts, certified to this court for inspection; and we agree and concur with the register and the chancellor as to the correctness of the report and of the decree confirming it. It would serve no good purpose to review in detail the various items of the account, with the evidence to support each. Suffice it to say that we feel sure no injury was done appellant by either the report or the confirmatory decree. While it is difficult, if not impossible, to ascertain the exact amount due, owing to the manner in which the account was kept and the transactions were had, yet we are satisfied that the amount found by the register cov-

ers the entire sum due, with interest thereon; and, as the amount of the attorney's fee was agreed upon, appellant has no reason to complain.

The reporter will set out the report of the register as a part of the statement of facts of this case.

Affirmed.

DOWDELL, C. J., and SIMPSON and McCLELLAN, JJ., concur.